**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JANET THOMAS,** | |
| Plaintiff, | |
| v. | Case No. 23-cv-2637 (TSC) |
| **MARCO RUBIO,** *in his official capacity as Acting Administrator of the U.S. Agency for International Development*, | |
| Defendant. | |

**<u>MEMORANDUM OPINION</u>**

Plaintiff Janet Thomas brings this action *pro se*, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16 (Title VII), and the Foreign Service Act of 1980, 22 U.S.C. § 3901 *et seq.*, against her former employer, the United States Agency for International Development (USAID), in connection with the termination of her employment by that agency. *See* Resubmitted 4th Am. Compl. ¶¶ 1–2, 10, ECF No. 41 ("4th Am. Compl."). USAID has moved to dismiss Counts One, Four, Five, Six, and Seven, as well as portions of Count Three.[1]  Def.'s Mot. to Dismiss 4th Am. Compl. at 1, ECF No. 40 ("MTD").  Thomas opposed the Motion and moved for leave to file a surreply.  ECF Nos. 42, 46.  For the reasons set forth below, the court will GRANT in part and DENY in part USAID's Motion to Dismiss and DENY Thomas's Motion for Leave to File Surreply.

---

[1]  There is no Count Two.  *See generally* 4th Am. Compl.

## I.    BACKGROUND

### A.  Factual Background[2]

Thomas, an African American woman, was employed with USAID as a Foreign Service Education Development Officer from 2015 until her termination in October 2019.  *See* 4th Am. Compl. ¶¶ 10, 22–25, 43.  In May 2017, she was assigned as Deputy Director of USAID's Education Office at the U.S. Embassy in Abuja, Nigeria, a position she held until April 2019.  *Id*. ¶ 10.  Thomas's first level supervisor was Denise O'Toole, and her second level supervisor was Steve Haykin.  *Id*. ¶¶ 23–24.

Soon after O'Toole became Thomas's supervisor, she informed Thomas that Haykin did not support tenure for Thomas based on performance issues.  4th Am. Compl. ¶ 26.  Thomas provided O'Toole with documentation showing that she had performed well on the tasks Haykin referenced.  *Id*. ¶ 29.  Thomas alleges that O'Toole proceeded to raise further performance concerns about her that were unfounded, insulted and intimidated her, reduced her work duties, omitted her from office functions, and denied her rest and recuperative leave.  *Id*. ¶¶ 30–32.

In March 2019, USAID's Executive Office notified Thomas that she would have to repay money for Emergency Visitation Travel that Haykin had approved almost a year earlier, based on Thomas's misrepresentation of the grounds for the travel.  4th Am. Compl. ¶ 34a.  In April 2019, Thomas received a letter of admonishment based on allegedly false claims made by O'Toole.  *Id.* ¶ 34b.  Thomas finished her assignment in Nigeria in April 2019 and was reassigned as the Higher Education Team Lead in Kabul, Afghanistan.  4th Am. Compl. ¶ 25.  On May 2, 2019, Haykin sent Thomas an unfavorable tenure evaluation.  *Id.* ¶ 36.

---

[2] Thomas's factual allegations are presumed true for purposes of analyzing USAID's Motion to Dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In August 2019, Thomas began her new assignment in Afghanistan.  4th Am. Compl. ¶ 38.  On September 13, 2019, two days after Thomas had provided sworn testimony to USAID's Equal Employment Opportunity Office (EEO), she was recalled to Washington.  *Id*. ¶¶ 39–40. Subsequently on October 7, 2019, Thomas was placed on administrative leave for performance issues connected to her service in Nigeria.  *Id*. ¶ 41.  By letter dated October 9, 2019, referencing a Tenure Denial Letter from June 28, 2019 that Thomas alleges she had not received, USAID terminated Thomas's employment, effective November 2019.  *Id*. ¶¶ 43–44.  The termination was based on the fact that Thomas was denied tenure by the Summer 2019 Tenure Board, which concluded that she lacked the potential to effectively serve as a career Foreign Service Officer. *See id.*; *see also* Ex. 28, Pl.'s Opp'n to MTD, June 2019 Letter, ECF No. 26-4.[3]

Thomas never received her final pay or personal belongings held in a USAID storage facility.  4th Am. Compl. ¶ 47.

**B. Procedural Background**

Thomas began EEO counseling in November 2018.  4th Am. Compl. ¶ 33.  On September 11, 2019, she provided a sworn statement to the EEO office.  On October 21, 2019, Thomas notified USAID that she intended to file a wrongful termination claim, which she did in December 2019.  *Id*. ¶¶ 45, 52.  In April 2020, Thomas filed an EEO claim for retaliation.  *Id*. ¶ 53.

On September 8, 2023, Thomas filed her first Complaint in this case as Jane Doe, and simultaneously moved to proceed under a pseudonym, which the court denied.  ECF Nos. 1–2, 4. Thomas then refiled her Complaint using her name, followed by an Amended Complaint.  ECF Nos. 6, 13.  The parties briefed USAID's Motion to Dismiss the Amended Complaint.  ECF Nos.

---

[3] The court may consider documents referenced in the complaint which are made part of the record.  *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

14, 16–17.  Thomas then filed a Second Amended Complaint.  ECF No. 19.  USAID moved to dismiss, considering this to be a Third Amended Complaint because of the two prior amended Complaints.  ECF No. 20.  Thomas then moved for leave to file a Fourth Amended Complaint, ECF Nos. 33, 37, which the court granted.  *See* Min. Order (Mar. 26, 2025).  USAID moved to dismiss that Complaint in part, and the Motion has been fully briefed.  ECF Nos. 40, 42, 44–45. Thomas then moved for leave to file a surreply, which also has been fully briefed.  ECF Nos. 46– 48, 50.

## II.  LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) for failure to state a claim tests the legal sufficiency of the allegations in the complaint.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  To overcome a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl*. *Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Not only are the factual allegations accepted as true, but the court must draw all reasonable inferences from the facts alleged in the plaintiff's favor.  *Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 15 (D.C. Cir. 2008).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 556 U.S. at 678 (citing *Bell Atl. Corp*, 550 U.S. at 556).  Even though detailed factual allegations are not required, the plaintiff must provide sufficient detail to rise above a mere claim that the defendant has caused the plaintiff some harm.  *Id.*; *Yukon-Kuskokwim Health Corp. v. United States*, 444 F. Supp. 3d 215, 218 (D.D.C. 2020).

A *pro se* litigant is held to less stringent standards of pleading than those applied to attorneys.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  Although courts "must construe *pro se*

filings liberally," *pro* se litigants must nonetheless comply with the Federal Rules of Civil Procedure. *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999); *Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987).

## III.   DISCUSSION

### A.  Foreign Service Act of 1980 – Counts One and Six

#### 1.   No Independent Cause of Action for Termination

In Counts One and Six, Thomas alleges that when USAID terminated her, it failed to provide her with due process required under the Foreign Service Act of 1980 (FSA), such as fair notice, a right to be heard and adherence to the Agency's procedures. *See* 4th Am. Compl. at Count One and Count Six. For support, Thomas cites 22 U.S.C. § 4007, which she claims requires that career candidates like herself be given notice and an opportunity to be heard before termination. Pl.'s Opp'n, ECF No. 42.

USAID correctly notes that § 4007 applies to terminations for exceeding the "maximum time in class limitations," which pertains to the time period in which Foreign Service Officers and other covered individuals "may remain in a single salary class or in a combination of salary classes." Def.'s Reply at 3, ECF No. 44. USAID argues that 22 U.S.C. § 4007 is inapplicable because Thomas was not terminated for exceeding her maximum time in class. *Id.* at 3 n.1. The court agrees.

The FSA "provides 'a comprehensive system for reviewing personnel action[s] taken against [Foreign Service] employees.'" *U.S. Info. Agency v. Krc*, 989 F.2d 1211, 1217 (D.C. Cir. 1993) (citation omitted). Under the FSA, the Foreign Service Grievance Board (FSGB) is charged with resolving individual complaints, known as grievances. *Am. Foreign Serv. Ass'n v. Trump*, 768 F. Supp. 3d 6, 20–21 (D.D.C. 2025). A grievance "is defined broadly under the FSA, and

includes 'any act, omission, or condition subject to the control of the Secretary of State which is alleged to deprive a member of the Foreign Service . . . of a right or benefit authorized by law or regulation or which is otherwise a source of concern or dissatisfaction to the member.'" *Id.* at 21 (quoting 22 U.S.C. § 4131(a)(1)). The FSA "permits any party 'aggrieved' by a ruling of the FSGB to 'obtain judicial review of a final action of . . . the Board . . . in the district courts of the United States.'" *Hill v. Blinken*, No. 18-cv-2518, 2023 WL 2351724, at *4 (D.D.C. Mar. 3, 2023) (quoting 22 U.S.C. § 4140(a)).

Thomas does not allege that she is aggrieved by any decision made by the FSGB, or that she even filed a grievance with the Board. *See generally* 4th Am. Compl. Instead, Thomas argues that she was a career candidate Foreign Service Officer, appointed to a tenure track, and that career candidates may not be terminated unless they receive notice and an opportunity for a hearing before the Performance Standards Board (PSB), which Thomas argues hears grievances for USAID. Pl.'s Opp'n at 4. Thomas contends that she was never afforded a hearing before the PSB, but offers no support for her claim that she was somehow relieved of the FSA's obligation to file a grievance with the FSGB before bringing her case to court. *See id.* at 4–6. The fact that USAID informed Thomas that the PSB was to review her performance evaluation file, *see id.* at 5, did not relieve Thomas of the obligation to file a grievance before the FSGB before seeking judicial review of her claims. This is especially true given that, as explained above, Thomas was terminated not through the PSB process but because the Tenure Board concluded that she lacked the potential to effectively serve as a career Foreign Service Officer. *See* June 2019 Letter. Although the Tenure Board's recommendation is not *per se* reviewable by the FSGB, the Tenure Board bases its recommendation on an employee's personnel records, and an employee may file a grievance with the FSGB challenging any alleged inaccuracies in those records. *Miller v. Baker*, 969 F.2d 1098,

1098–99 (D.C. Cir. 1992) (citing 22 U.S.C. § 4131(b)(2), (b)(3)).  Thus, Thomas's recourse to challenge the Tenure Board's decision was to file a grievance before the FSGB regarding the facts underlying that decision.  She failed to do so and therefore cannot challenge that decision in this court.

Notwithstanding these deficiencies, Thomas filed an EEO claim for wrongful termination, but her claim that her termination was based on discrimination cannot be brought under the FSA. The law is clear that Title VII is the exclusive remedy for discrimination claims by federal employees.  *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976); *see also Alhayoti v. Blinken*, No. 21-cv-7713, 2022 WL 2869850, at *1, 4–5 (N.D. Cal. July 21, 2022) (dismissing discrimination claims about violations of State Department policies due to Title VII's exclusive remedy).

Thus, to the extent that Thomas alleges under the FSA that her termination was discriminatory, the court dismisses her claim on that basis as well.

2.  <u>USAID Policies and Directives</u>

Thomas also alleges that USAID failed to extend to her the rights and protections afforded under USAID's internal guidelines and procedures.  4th Am. Compl. at Count Six.  In particular, Thomas cites ADS 464, Foreign Service Performance-Based Actions, and ADS 414, Tenure Process and Policies for Foreign Service Career Candidates.  *Id.* ¶ 50. Thomas offers no authority allowing her to bring claims before this court concerning these internal guidelines.  *See id.*; *see also* Pl.'s Opp'n at 5–6.  In fact, a similar type of claim was rejected by the court in *Alhayoti,* in which a State Department employee claimed that the Department had discriminated against him by violating the Foreign Affairs Manual.  The court there held that "Title VII provides the exclusive basis for relief.  Therefore, the claims based on the Department's internal policies . . .

are dismissed with prejudice." *Alhayoti*, 2022 WL 2869850, at *1; *see also id*. at *4 (explaining that "the regulations in the Foreign Affairs Manual do not, in general, create a private right of action" (citing *Rouse v. Dep't of State*, 567 F.3d 408, 418 (9th Cir. 2009), and *Brown*, 425 U.S. at 835)).   Accordingly, the court dismisses Count Six alleging violation of USAID's policies and procedures.

### C. Inference of Racial Discrimination – Count Five

Under Title VII, to survive a motion to dismiss, a plaintiff must plead sufficient facts to show that an inference of discrimination from the actions alleged is reasonable and plausible.  *See Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016).  It is insufficient for a plaintiff to allege merely that she is African American and adverse or unfair actions were taken against her at work. *See Forman v. Small*, 271 F.3d 285, 291, 293 (D.C. Cir. 2001).  Absent any direct evidence of discrimination, a plaintiff must plead facts that constitute indirect evidence of discrimination. *Brown v. Sessoms*, 774 F.3d 1016, 1022 (D.C. Cir. 2014).  This may take the form of comparator evidence, offered to show that she was treated differently than other similarly situated employees outside her protected group.  *Id.*  Thomas alleges no direct evidence of discrimination and instead relies on comparator evidence.

USAID contends that Thomas's comparator allegations are insufficient because "[c]omparator employees are similarly situated only if 'all of the relevant aspects of the plaintiff's employment situation are nearly identical to those of the' comparator" and Thomas has not made this showing.  Def.'s MTD Br. at 13, ECF No. 40-1.  But "the nearly identical standard is" the standard "for summary judgment or at trial, once plaintiffs have had the benefit of discovery."

*Joyner v. Morrison & Foerster LLP,* 140 F.4th 523, 530 (D.C. Cir. 2025) (cleaned up).[4]  The

pleading standard, by contrast, is "substantially [less] onerous," *see Nanko Shipping, USA v. Alcoa,*

*Inc.*, 850 F.3d 461, 467 (D.C. Cir. 2017), and the D.C. Circuit has "never required a complaint to

include factual allegations showing that the comparator's circumstances are nearly identical to the

plaintiff's in all relevant respects." *Joyner*, 140 F.4th at 531 (cleaned up).  At the pleading stage,

a plaintiff need only allege "that a comparator was similarly positioned to the plaintiff in at least

some relevant respects, and include[] enough detail that [the court] can plausibly infer that

discrimination caused the defendant's differential treatment of the plaintiff."  *Id.*

Thomas has made this lesser showing.  Specifically, she alleges that both she and her

comparator—a White woman—were foreign service officers who started at USAID at "the same

time" and "were trained in the same cohort."  4th Am. Compl. ¶ 51.  Both "served at the Nigeria

mission . . . at the same time" and under the same second-level supervisor, Haykin.  *Id.*  Both "were

on the same tenure timeline," and the comparator, like Thomas, "was initially not recommended

for tenure."  *Id.*  Given these significant similarities—same position, same posting, same

supervisor, and same seniority—but differential treatment, it is at least plausible to infer at this

early stage that Thomas was treated differently because of her race.

USAID resists this notion, contending that Thomas and her comparator were not "similarly

situated with respect to the tenure decision" because Thomas did not allege that the comparator

had the same performance issues that Thomas had.  Def.'s MTD Br. at 14.  But this argument begs

the question.  After all, Thomas specifically alleges that her negative performance evaluations

were false and a pretext for discrimination, and that they were contradicted by previous praise for

---

[4] Although *Joyner* is a Section 1981 case, the D.C. Circuit "use[s] the same framework for determining whether unlawful discrimination has occurred" under Title VII.  140 F.4th at 534 (quoting *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 576 (D.C. Cir. 2013) (per curiam)).

her work. *See* 4th Am. Compl. ¶¶ 28–31, 36. USAID's argument is thus improper because it asks the court to resolve a factual dispute at the pleading stage and credit USAID's position that Thomas was a bad employee over Thomas's allegations that her negative evaluations were false, pretextual, and discriminatory. Before this factual dispute can be resolved, Thomas "must first be given an opportunity to show through discovery that . . . Defendants' non-discriminatory reason for denying her [tenure] is a pretext for discrimination." *Barrett v. Pepco Holdings*, 275 F. Supp. 3d 115, 121 (D.D.C. 2017). The court will therefore deny Defendants' Motion to Dismiss with respect to Count Five.

### D. Hostile Work Environment – Count Four

To state a claim for a hostile work environment, a plaintiff must plead facts sufficient to show that "[s]he was exposed to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.'" *Durant v. D.C. Gov't*, 875 F.3d 685, 700 (D.C. Cir. 2017) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). To determine whether a hostile work environment exists, the court evaluates "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. Title VII is not a "general civility code"; instead, the conduct must be so extreme as to amount to a change in the terms and conditions of employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). A hostile work environment generally is not based on "the ordinary tribulations of the workplace." *Buie v. Berrien*, 85 F. Supp. 3d 161, 180 (D.D.C. 2015) (internal citations omitted).

Thomas claims that she was subjected to a hostile work environment when her first level supervisor, O'Toole, "insulted and intimidated Plaintiff, reduced Plaintiff's work duties, omitted

Plaintiff from office functions and denied Plaintiff's rest and recuperation leave." 4th Am. Compl. ¶ 32. Thomas also alleges that she was subjected to "isolation, and eventual termination." *Id*. at Count Four.

Thomas has not alleged acts, alone or in combination, that show she was subjected to severe and pervasive conduct that amounted to an abusive work environment. She claims that she was insulted and intimidated, but, beyond those conclusory allegations, she alleges no facts identifying any specific type of conduct that could constitute an insult or intimidation nor does she allege when or how often any insult and intimidation occurred. These conclusory statements cannot support a claim of hostile work environment, as they fail to demonstrate any severe or pervasive conduct. *See, e.g.*, *Johnson v. District of Columbia*, 49 F. Supp. 3d 115, 121 (D.D.C. 2014) (conclusory allegations fail to state a claim for hostile work environment).

With respect to Thomas's claim that her work duties were reduced in some unspecified way, she was omitted from unspecified office functions, and she was denied an unspecified amount of leave, all over an unspecified amount of time, none of these allegations, individually or together, rises to the level of abusive conduct sufficient to state a claim for a hostile work environment. *See, e.g.*, *Pearsall v. Holder*, 610 F. Supp. 2d 87, 98–99 & n.10 (D.D.C. 2009) (finding that the "indignities" alleged by plaintiff, including assigning him a substandard office space, denying him training, denying him the opportunity to telecommute on a temporary basis for medical reasons, excluding him from certain meetings, and generally underutilizing his skills and experience, did not support a hostile work environment claim); *Kline v. Springer*, 602 F. Supp. 2d 234, 239–43 (D.D.C. 2009) (rejecting hostile work environment claim based on "fully successful" performance evaluation, denial of request to telework, an offensive email from a supervisor, removal of administrative rights to computer program, denial of private office space, an audit of time records,

reprimand, and tampering with leave).  Thomas's remaining allegation that she was subject to repeated false evaluations of her work performance likewise fails to move the needle, as "negative performance reviews—even if inaccurate[]—are not strong indicia of a hostile work environment." *Hutchinson v. Holder*, 815 F. Supp. 2d 303, 322 (D.D.C. 2011).

Because Thomas has failed to plead facts showing severe and pervasive abusive conduct, her hostile work environment claim must be dismissed.

### E.  Retaliation Claim – Count Three

#### 1.  Materially Adverse Actions

To state a claim for retaliation under Title VII, a plaintiff must plead facts from which it may be plausibly inferred: "(1) that [s]he engaged in a statutorily protected activity; (2) that the employer took an adverse personnel action; and (3) that a causal connection existed between the two." *Morgan v. Fed. Home Loan Mortg. Corp.*, 328 F.3d 647, 651 (D.C. Cir. 2003).  "[N]ot everything that makes an employee unhappy is an actionable adverse action." *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013).  An action is considered "materially adverse" if it would have dissuaded an individual from filing a claim of discrimination. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

In her Complaint, Thomas alleges that USAID retaliated against her by terminating her employment, placing negative information in a credit report, withholding her final pay and refusing to return her belongings that USAID held in storage.  4th Am. Compl. at Count III.  USAID does not contest that these actions could be considered materially adverse, except for placing negative information in a credit report.  Def.'s MTD Br. at 18–19.

The court finds that Thomas's allegation that "a derogatory account was placed on Plaintiff's credit report from the Department of Treasury for a false debt created by USAID" also

qualifies as a materially adverse action. *See* 4th Am. Compl. ¶ 48. Consequently, all four of Thomas's claims involve materially adverse actions.[5]

In her opposition brief, Thomas argues that all of USAID's actions against her after she initiated the EEO process in November 2018 constitute "an orchestrated campaign [of retaliation] designed to create a pretext for her termination." Pl.'s Opp'n at 10. This includes alleged false performance allegations, a letter of admonishment, a requirement to repay travel money, and an unfavorable tenure recommendation. *See id.*; *see also* 4th Am. Compl. ¶¶ 34–41. The court finds that at the motion to dismiss stage, Thomas has sufficiently pled materially adverse actions to support a retaliation claim under Title VII.

### 2. Causation for Certain Retaliatory Acts

USAID argues that certain portions of Thomas's retaliation claim must be dismissed because Thomas has failed to show causation between her use of the EEO process and some of the alleged adverse actions—specifically, the retraction of approval for Emergency Visitation Travel funding in March or April 2019, which resulted in the negative credit reporting, and the "unfavorable Tenure Evaluation Form" in May 2019. Defs.' MTD Br. at 19–20.[6]

Although Thomas started EEO counseling in November 2018, *see* 4th Am. Compl. ¶ 33, USAID suggests that Thomas's supervisors did not become aware of any protected activity until

---

[5] USAID also argues that Thomas failed to exhaust her administrative remedies with respect to the agency's retention of her belongings, because she did not raise this claim in her post-termination April 2020 EEO complaint. Def.'s MTD Br. at 20–21. Thomas responds that she had been told by individuals responsible for her termination that her belongings would be returned to her. Pl.'s Opp'n at 11. Because Thomas claims reasonable reliance on a government official's representation, the court declines to dismiss this claim for failure to exhaust administrative remedies. *See Bowden v. United States*, 106 F.3d 433, 438 (D.C. Cir. 1997).

[6] USAID urges the court to treat its argument as conceded because Thomas did not respond to it in her opposition. *See* Def.'s Reply at 9. "When a party fails to specifically respond to certain arguments, a court 'may'—but need not—treat those arguments as conceded." *D.C. Int'l Pub.*

Thomas submitted sworn testimony in September 2019. *See* Def.'s MTD Br. at 20. It is true that Thomas's "supervisors could not have retaliated against [her] unless they had knowledge of [her] protected activity" and Thomas does not allege any other facts that show her supervisors knew she had initiated EEO counseling in November 2018. *See Jones v. Bernanke*, 557 F.3d 670, 679 (D.C. Cir. 2009). But Thomas "needn't provide direct evidence that [her] supervisors knew of [her] protected activity." *Id.* USAID, as Thomas's employer, no doubt had notice that Thomas had initiated EEO counseling, which, after all, "serves the purpose of 'enabling the agency and its employee to try to informally resolve the matter before an administrative charge is filed.'" *Koch v. Walter*, 935 F. Supp. 2d 143, 151 (D.D.C. 2013) (quoting *Artis v. Bernanke*, 630 F.3d 1031, 1034 (D.C. Cir. 2011)). And the fact that Thomas's "*employer* had knowledge of [her] protected activity, and the adverse personnel action took place shortly after that activity," is "adequate to permit an inference of retaliatory motive," at least at the pleading stage. *Jones*, 557 F.3d at 679 (quoting *Holcomb v. Powell*, 433 F.3d 889, 903 (D.C. Cir. 2006)). In other words, the fact that USAID was generally aware of Thomas's November 2018 protected activity "can support an inference" that her supervisors specifically were aware of that activity when they took materially adverse actions months later. *Id.*; *see also Williams v. District of Columbia*, 317 F. Supp. 3d 195, 201 (D.D.C. 2018) ("The D.C. Circuit has held that a plaintiff is not required to allege that a

---

*Charter Sch. v. Lemus*, 2022 WL 873549, at *3 n.2 (D.D.C. Mar. 24, 2022) (quoting *Campaign Legal Ctr. v. FEC*, 520 F. Supp. 3d 38, 50 (D.D.C. 2021)). The court declines to do so here. Although Thomas's opposition is imperfect, it does dispute USAID's causation argument by contending that its retaliatory "actions were taken in direct response to the Plaintiff's protected activity." Pl.'s Opp'n at 10–11. Given that Thomas is *pro se* and held "to less stringent standards," the court will give her some leeway. *Martin v. Donley*, 886 F. Supp. 2d 1, 12 (D.D.C. 2012) (quoting *Crisafi v. Holland*, 655 F.2d 1305, 1308 (D.C. Cir. 1981)).

specific supervisor had knowledge of protected activity to plead a claim for retaliation" if the agency generally knew about that activity.)

USAID next suggests that there is insufficient temporal proximity between Thomas's initiation of EEO counseling in November 2018 and the retraction of travel funding in March 2019. It contends that "alleging retaliation that occurred more than three months after the employee's protected activity generally fails to state a claim." Def.'s MTD Br. at 19. Although there is a four-month gap between the November 2018 protected activity and the March 2019 adverse action, there is "no bright line rule" regarding temporal proximity; it depends on the facts of the case. *See Pueschel v. Chao*, 955 F.3d 163, 167 (D.C. Cir. 2020). While a four-month gap may ultimately prove insufficient to establish causation if no other evidence emerges during discovery and no other circumstances are identified, the D.C. Circuit "sometimes accept[s] an adverse employment action occurring within three to four months of the protected activity as sufficient to allow an inference of causation." *Spence v. U.S. Dep't of Veterans Affs.*, 109 F.4th 531, 540 (D.C. Cir. 2024); *see also Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 69 (D.C. Cir. 2015) (five-month gap plus other circumstantial evidence of retaliation "sufficient . . . at the summary judgment stage"). The court will therefore allow Thomas's retaliation claim to proceed to discovery and denies USAID's Motion with respect to Count Three.

### F. The EEO Process – Count Seven

In Count Seven, Thomas alleges that USAID failed to conduct a fair and unbiased EEO investigation into her claims. In particular, she contends that the EEO office omitted key facts and

material evidence, failed to properly investigate her claims, and failed to remedy the discrimination and retaliation she allegedly experienced.  4th Am. Compl. at Count VII.

USAID responds that Thomas has no cause of action for a separate claim targeting the EEO process, and that the remedy for an allegedly faulty EEO process is to sue on the underlying claims. Def.'s MTD Br. at 21.

Relying on *Rann v. Chao*, 346 F.3d 192, 197 (D.C. Cir. 2003), Thomas counters that this Circuit has recognized that federal employees are entitled to Title VII's protections and procedures and may seek judicial relief when these protections and procedures are violated.  Pl.'s Opp'n at 13.  But in *Rann*, the Court did not address any right of action for alleged EEO process error, instead holding that a plaintiff has failed to exhaust his administrative remedies when he refuses to cooperate in an EEO investigation.  *See generally* 346 F.3d 192.

As the court noted in *Koch v. White*, 967 F. Supp. 2d 326 (D.D.C. 2013), "[t]o the extent that an agency's improper processing of an administrative complaint results in the agency's failure to address the underlying violation of an anti-discrimination statute, this harm to the employee can be remedied through the employee's right of action in federal court."  *Id.* at 336.  Indeed, "'Congress has not authorized, either expressly or impliedly, a cause of action against the EEOC [or by extension a federal agency's EEO office] for . . . alleged negligence or other malfeasance in processing an employment discrimination charge.'"  *Vetere v. N.Y. State Gov't*, No. 19-cv-2834, 2019 WL 5549833, at *2 (D.D.C. Oct. 24, 2019) (parenthetical in original) (quoting *Smith v. Casellas*, 119 F.3d 33, 34 (D.C. Cir. 1997) (per curiam); *see also Etokie v. Duncan*, 202 F. Supp. 3d 139, 150 n.8 (D.D.C. 2016) (remedy for alleged irregularities in the processing of

discrimination administrative complaint is to sue agency directly regarding the alleged discrimination). Consequently, the court grants USAID's Motion to Dismiss Count Seven.

### G. Motion for Leave to File a Surreply

The filing of a surreply is disfavored and generally only permitted to address a new argument or respond to a mischaracterization raised in a reply motion. *Kiewit Power Constructors Co. v. Sec'y of Labor*, 959 F.3d 381, 393 (D.C. Cir. 2020). It is not to be used to further address arguments raised in substantial form in the opening motion or to respond to arguments in a reply brief that responded to the opposition brief. *Id*.

Thomas moved for leave to file a surreply, on the grounds that USAID "presented new arguments, misrepresented the facts and presented a materially different framing of previously raised issues that mischaracterize Plaintiff's claims." Pl.'s Surreply Mot. ¶ 3, ECF No. 46. She contends that USAID's argument that she was required to file a grievance with the FSGB in order to obtain a hearing was new and misleading. Pl.'s Proposed Surreply at 2, ECF No. 46-1. On the contrary, USAID argued in its opening brief that Thomas could only seek judicial review under the FSA after receiving a final decision by the FSGB. Def.'s MTD Br. at 7–8. USAID further explained, in response to Thomas's argument that the PSB process was applicable to her termination, that Thomas's employment was terminated by a Tenure Board decision and so the PSB proceedings were inapplicable. *Compare* Pl.'s Opp'n at 4–5 *with* Def.'s Reply at 3–4. As the D.C. Circuit noted in *Kiewit Power Constructors Co.*, "[t]hat the Secretary draws different conclusions from the underlying sources is insufficient to justify a rebuttal. And to the extent that

the Secretary adopted any 'new' position, he was simply responding to contentions made by Kiewit.  This is the very nature of a reply brief."  959 F.3d at 393.

Finally, Thomas's argument that USAID has "consistently failed to address the core issue" of her retaliatory termination, Pl.'s Proposed Surreply at 3, amounts to no more than an attempt to further bolster her previous arguments about her termination.  "Allowing rebuttal argument on these facts risks opening the door to any litigant that disagrees with the opposing party's arguments to evade the standard briefing requirements and gain the last word.  We decline to do so . . . ." *Kiewit Power Constructors Co.*, 959 F.3d at 393–94.  This court reaches the same result here and denies Thomas's Motion for Leave to File a Surreply.

### IV.    CONCLUSION

For the reasons set forth above, the court will DENY Thomas's Motion for Leave to File a Surreply.  The court will GRANT in part and DENY in part USAID's Motion to Dismiss. Specifically, the court will DISMISS Counts One, Four, Six, and Seven, and permit Counts Three and Five to proceed.  A separate order will accompany this opinion.

Date: March 25, 2026

*Tanya S. Chutkan*

TANYA S. CHUTKAN
United States District Judge